IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| H.N., | : |
| | : |
| Petitioner, | : |
| | : |
| v. | : CASE NO. 7:21-CV-59-HL-MSH |
| | : 28 U.S.C. § 2241 |
| Warden, STEWART DETENTION CENTER, | : |
| | : |
| Respondent.[1] | : |

_____

# ORDER AND RECOMMENDATION

Pending before the Court is Petitioner's petition and amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (ECF Nos. 1, 14). Also pending are Petitioner's motion and amended motion for a preliminary injunction (ECF Nos. 6, 13), motion for leave to file excess pages (ECF No. 9), motions to add parties (ECF Nos. 17, 24), and an emergency motion for release from detention (ECF No. 26). For the reasons stated below, it is recommended that Petitioner's petition and amended petition for habeas relief, motion and amended motion for a preliminary injunction, and emergency motion for release from detention be denied. His motion for leave to file excess pages is granted. His motions to add parties are denied.

# BACKGROUND

Petitioner is a native and citizen of the Czech Republic.[2]  Am. Ferra Decl. ¶ 4, ECF

---

[1] As explained below, the Court is ordering that Russell Washburn, the warden of Stewart Detention Center ("SDC"), be substituted as Respondent.
[2] Because all documents have been electronically filed, this Order and Recommendation cites to

No. 16-1; Resp't's Ex. A. at 3, ECF No. 16-2.  He entered the United States on December 1, 2019, as a visitor for pleasure and was authorized to stay in the country until May 31, 2020.  Am. Ferra Decl. ¶ 4; Resp't's Ex. A., at 2-4.  On January 21, 2019, he applied for a non-immigrant visa.  Am. Ferra Decl. ¶ 8; Resp't's Ex. A, at 3; Resp't's Ex. D, at 2, ECF No. 16-5.

On April 3, 2021, the Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear ("NTA"), charging him as removable under Section 237(a)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(A), due to having procured admission into the United States by fraud or willful misrepresentation of a material fact in violation of Section 212(a)(6)(C)(i) of the INA, 8 U.S.C. § 1182(a)(6)(C)(i).  Am. Ferra Decl. ¶ 10.  Specifically, Petitioner was charged with failing to disclose a 2018 drug conviction in the Czech Republic.  Am. Ferra Decl. ¶¶ 5-8, 10; Resp't's Ex. A, at 3-4.  United States Immigration and Customs Enforcement ("ICE") took Petitioner into custody the same day.  Am. Ferra Decl. ¶ 9; Resp't's Ex. A, at 2.  An immigration judge ("IJ") denied bond on June 18, 2020, concluding Petitioner was an extreme flight risk.  Resp't's Ex. E, at 2, ECF No. 16-6.  According to the record, Petitioner fled the Czech Republic prior to commencement of a nine-year prison sentence.  Resp't's Ex. A, at 3; Resp't's Ex. C, at 2, ECF No. 16-4.  The Board of Immigration Appeals ("BIA") affirmed the IJ's bond denial on October 30, 2020.  Resp't's Ex. F, at 4-5, ECF No. 16-7.

---

the record by using the document number and electronic screen page number shown at the top of each page by the Court's CM/ECF software.

On July 29, 2020, Petitioner was charged with an additional ground of removability under Section 237(a)(1)(A) of the INA, 8 U.S.C. § 1227(a)(1)(A), for being inadmissible under Section 212(a)(2)(A)(i)(II) of the INA, 8 U.S.C. § 1182(a)(2)(A)(i)(II), due to a controlled substance conviction.  Am. Ferra Decl. ¶ 10; Resp't's Ex. D, at 2.  On December 7, 2020, an IJ ordered Petitioner's removal.  Resp't's Ex. G, ECF No. 16-8.  Petitioner was again denied bond on May 6, 2021.  Resp't's Ex. J, at 2, ECF No. 16-11.  Petitioner appealed his removal order, and the BIA dismissed his appeal on June 2, 2021.  Resp't's Ex. H, at 4-6, ECF No. 16-9.  Petitioner filed a petition for review with the United States Court of Appeals for the Eleventh Circuit, but the Eleventh Circuit denied Petitioner's motion to stay his removal on August 11, 2021.  Order, *Navratil v. U.S. Att'y Gen.*, No. 21-12211-J (11th Cir. Aug. 11, 2021).  The Eleventh Circuit denied Petitioner's motion for reconsideration on September 7, 2021.  Order, *Navratil v. U.S. Att'y Gen.*, No. 21-12211-J (11th Cir. Sept. 7, 2021).

The Court received Petitioner's original habeas petition on May 14, 2021, and his amended petition on June 14, 2021 (ECF Nos. 1, 14).  The Court received his original motion for a preliminary injunction on June 1, 2021, and his amended motion on June 14, 2021 (ECF Nos. 6, 13).  He also filed motions seeking to add the United States Attorney General and SDC—where he is currently detained—as respondents to the petition (ECF Nos. 17, 24).  Finally, he filed an emergency motion seeking release based on his recent contraction of Covid-19 (ECF No. 26).[3]  This case is ripe for review.

---

[3] Petitioner also filed a motion for leave to file excess pages in connection with his original motion for preliminary injunction (ECF No. 9).  That motion is granted.

**DISCUSSION**

**I.     Habeas Application**

Petitioner raises four grounds for habeas relief. First, he complains about the conditions of his confinement. Pet. 6-7, ECF No. 1. Second, he contends his detention has become unduly prolonged in violation of the Fifth Amendment Due Process Clause. *Id.* at 7. Third, he contends his detention violates the Fifth and Fourteenth Amendment Equal Protection Clauses. *Id.* Fourth, he asserts his detention violates his Fourth Amendment right against unlawful seizure. Am. Pet. 1-2, ECF No. 14. The Court will address each of these grounds in turn.

**A.     Conditions of Confinement**

Petitioner's first ground for relief is based on the conditions of his confinement. Specifically, he complains about the adequacy of his medical care and the risk posed by Covid-19.[4] Pet. 6-7. Conditions of confinement claims, however, are not cognizable in a habeas action. *See Vaz v. Skinner*, 634 F. App'x 778, 781 (11th Cir. 2015) (per curiam) ("Petitioner's § 2241 petition is not the appropriate vehicle for raising an inadequate medical care claim, as such a claim challenges the conditions of confinement, not the fact or duration of that confinement."); *see also A.S.M. v. Warden, Stewart Cnty. Det. Ctr.*, 467 F. Supp. 3d 1341, 1348 (M.D. Ga. 2020) (concluding that the Court does not have jurisdiction to consider habeas corpus claim based on presence of Covid-19 at SDC).

---

[4] When Petitioner originally filed his petition, he was detained at Irwin County Detention Center ("ICDC"). Pet. 1. On June 23, 2021, he was transferred to SDC. Pet'r's Suppl. Decl. 1, ECF No. 22-1. While Petitioner did not move to amend his petition following his transfer, he also complains about the conditions of his confinement at SDC. *Id.* at 1-2.

Therefore, this ground provides no basis for habeas relief.

    B.    Due Process

Petitioner also alleges that his continued detention violates the Fifth Amendment Due Process Clause. Pet. 7. At the time he filed his petition, Petitioner's removal order was not final. When the BIA dismissed his appeal on June 2, 2021, however, his removal order became administratively final, and his due process challenge to pre-final-order-of-removal detention under 8 U.S.C. § 1226 became moot. Resp't's Ex. H; 8 C.F.R. § 1241.1(a) (providing that a removal order becomes final "[u]pon dismissal of an appeal by the [BIA]"); *see De La Teja v. United States*, 321 F.3d 1357, 1362-63 (11th Cir. 2003) (holding that entry of final removal order rendered due process challenge to § 1226(c) detention moot); *Dixit v. Warden, Irwin Cnty. Det. Ctr.*, No. 7:18-cv-157-HL, 2019 WL 12267340, at *2 (M.D. Ga. Sept. 17, 2019) (finding that petitioner's challenge to § 1226(a) detention became moot upon entry of final order of removal). Instead, the authority for his detention switched to section 241(a) of the INA, 8 U.S.C. § 1231(a), which addresses aliens detained post-final-order-of-removal. *Id.* at 1363. If the Eleventh Circuit had granted a stay of removal, then the authority for Petitioner's detention would have reverted back to § 1226. *See Farah v. U.S. Att'y Gen.*, Nos. 19-12462, 20-12941,--F.4th--, 2021 WL 4085755, at *12 (11th Cir. Sept. 8, 2021) (holding that while petitioner's detention was briefly governed by § 1231(a) after the BIA dismissed his appeal, it was governed by § 1226(c) upon the Eleventh Circuit's order staying removal). But the Eleventh Circuit denied Petitioner a stay of removal. Therefore, § 1231(a) continues to govern his detention.

Any challenge to Petitioner's detention under § 1231(a) is premature. That code

5

section provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). Detention of the alien within the ninety-day removal period is mandatory. 8 U.S.C. § 1231(a)(2). Further, inadmissible aliens, criminal aliens, and those who pose a risk to the community or of non-compliance with a removal order "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [§ 1231(a)(3)]." 8 U.S.C. § 1231(a)(6).

By its explicit terms, § 1231(a)(6) does not limit the length of detention for an alien detained under that section. In *Zadvydas v Davis*, 533 U.S. 678 (2001), however, the United States Supreme Court applied the doctrine of constitutional avoidance to "read an implicit limitation into the statute." 533 U.S. at 689. The Supreme Court held that 1231(a)(6) authorizes post-removal-order detention only for a period "reasonably necessary" to accomplish the alien's removal from the United States. *Id.* at 699-700. The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish such removal. *Id*. at 701. The Court of Appeals for the Eleventh Circuit has explained that to be entitled to release under *Zadvydas*, an alien must show: "(1) that the six-month period, which commences at the beginning of the statutory removal period, has expired when the § 2241 petition is filed; and (2) evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) (per curiam) (quotation marks omitted); *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (per curiam) ("[I]n order to state a claim under *Zadvydas* the alien . . . must show

post-removal order detention in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.").

Here, Petitioner's removal period became administratively final on June 2, 2021, when the BIA dismissed his appeal. His removal period began to run that day. *See* 8 U.S.C. § 1231(a)(1)(B)(i) (providing that the removal period begins when a removal order becomes administratively final). Thus, Petitioner is only three and a half months into his removal period, which is far less than the six months required to state a claim under *Zadvydas*.[5]

As for any separate substantive due process challenges to the length of his detention, *Zadvydas* forecloses those claims. In *Zadvydas*, the Court interpreted § 1231(a)(6) so as to avoid a Fifth Amendment Due Process Clause violation. 533 U.S. at 689-90. Thus, if an alien fails to show detention in excess of six month, then a due process claim must fail. *See Thompson v. Horton*, 4:19-cv-00120-AKK-HNJ, 2019 WL 4793170, at *12 (N.D. Ala. Aug. 26, 2019) ("[A]ny due process argument lodged by [the petitioner] falls under *Zadvydas*. Due to the applicability of *Zadvydas* and *Akinwale*, the appropriate inquiry to allay a potential due process violation does not manifest until the six-month period of

---

[5] Even if Petitioner was now past the six-month removal period, his petition would still be subject to dismissal because it had not run—or even commenced—at the time he filed his petition. *See Akinwale*, 287 F.3d at 1052 ("This six-month period thus must have expired at the time Akinwale's § 2241 petition was filed in order to state a claim under *Zadvydas*."). In fact, the ninety-day statutory removal period under 8 U.S.C. § 1231(a) had not even commenced when Petitioner filed his petition, and it had only run twenty-one days when Respondent filed his response. Thus, it is not clear under what provision of § 1231(a)(6) Petitioner's detention has been continued. The Court notes, however, that in denying pre-final-order-of-removal bond, the IJ concluded that Petitioner "would have little reason to appear for his removal proceedings or, if issued a final order of removal, his removal." Resp't's Ex. E, at 5.

detention expires."), *recommendation adopted by* 2019 WL 4750072 (N.D. Ala. Sept. 30, 2019); *Davis v. Rhoden*, No. 19-20082-CV-SCOLA, 2019 WL 2290654, at *8 (S.D. Fla. Feb. 26, 2019) ("[T]he framework in *Zadvydas*, which was designed to avoid constitutional infirmity under the Fifth Amendment's Due Process Clause, appears to provide Petitioner with all the process that is due."), *recommendation adopted by* 2019 WL 2289624 (S.D. Fla. May 29, 2019).

    C.    Equal Protection

Petitioner next asserts he is entitled to release based on a violation of his Fifth and Fourteenth Amendment rights to equal protection. Pet. 7. Even assuming such a claim is cognizable in this habeas action, his claim fails. Petitioner does not allege discrimination based on membership in a protected class such as race or gender. Instead, he asserts a "class of one" claim as recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000). Pet'r's Mem. in Supp. of Pet. 27, ECF No. 6-1. "To prove a class of one claim, the plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009) (internal quotation marks omitted). The Eleventh Circuit has "frequently noted that the 'similarly situated' requirement must be rigorously applied in the context of 'class of one' claims." *Id.* Further, it has

> observed that where the challenged governmental decision is simple or one-dimensional—for example, where the decision involves the application of a single criterion to a single issue—making out a "class of one claim" is

> generally easier than in cases where governmental action is "multi-dimensional, involving varied decisionmaking criteria applied in a series of discretionary decisions made over an extended period of time . . . . In short, establishing a "class of one" equal protection claim can be an onerous task, and properly setting forth a "class of one" claim should not be regarded as a perfunctory matter.

*Id.* "Accordingly, when plaintiffs in 'class of one' cases challenge the outcome of complex, multi-factored government decisionmaking processes, similarly situated entities 'must be very similar indeed.'" *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004)).  In fact, "[t]o be similarly situated, the comparators must be *prima facie identical in all relevant respects*." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1264 (11th Cir. 2010) (internal quotation marks omitted).  "A class of one plaintiff might fail to state a claim by omitting key factual details in alleging that it is similarly situated to another." *Griffin*, 496 F.3d at 1205 (internal quotation marks omitted).

Petitioner's allegations are insufficient to state a class of one claim.  He cites examples of other ICDC detainees with criminal convictions who were released despite being subject to final removal orders to show that he was treated differently to other similarly situated individuals.  Pet'r's Decl. 4-5, ECF No. 8-11.  The release of immigration detainees, however, is multi-dimensional.  There are numerous factors that play a role, including, for example, the immigration status of the detainee—e.g., inadmissible alien versus legal permanent resident.  Further, none of the examples cited by Petitioner involve aliens who were convicted of crimes in their country of citizenship and then fled to avoid imprisonment.  Petitioner relies on a February 18, 2021, interim guidance memo ("Interim

9

Guidance") from the Acting Director of ICE that he contends makes him a non-priority for removal, but the Interim Guidance itself requires immigration officials to account for a wide range of individual considerations. Pet'r's Mem. in Supp. of Pet. 27-28; Interim Guidance: Civil Immigration Enforcement and Removal Priorities (Feb. 18, 2021), https://www.ice.gov/doclib/news/releases/2021/021821_civil-immigration-enforcement_interim-guidance.pdf. As Petitioner fails to show he was treated differently from other similarly situated individuals, the Court need not address whether he has sufficiently alleged discriminatory intent.

    D.    <u>Unlawful Seizure</u>

Petitioner alleges his detention violates his Fourth Amendment right to be free from illegal searches and seizures because he was arrested on a European arrest warrant, which he contends is "not a valid legal document" in the United States. Am. Pet. 2. Assuming this is true, however, ICE also detained Petitioner pursuant to an NTA charging him with removability. Am. Ferra Decl. ¶ 10. And a challenge to ICE's service of an NTA is barred by the REAL ID Act of 2005 ("REAL ID Act"), Pub. L. 109-13, § 106, 119 Stat. 231 (2005), 8 U.S.C. § 1252. Under the REAL ID Act, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g); *see Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) (per curiam) (holding that § 1252(g) barred plaintiff's *Bivens* action alleging ICE illegally arrested him).

Moreover, even if the Court accepted Petitioner's argument that his initial detention

was somehow unlawful, he is still not entitled to habeas relief. "The body or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) (internal quotation marks omitted). Further, "the mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." *Id.* at 1040; *see also Nyang v. Barr*, 4:19-cv-01459-RDP-HNJ, 2020 WL 9396482, at *1 (N.D. Ala. Feb. 4, 2020) (rejecting habeas claim based on alleged illegal detainer, stating that "the legitimacy of Petitioner's initial arrest is not properly brought in this habeas action"). Here, a removal order has now been issued and Petitioner is being held in post-final-order-of-removal detention as authorized by 8 U.S.C. § 1231(a). Whether that removal order was validly entered is an issue for the Eleventh Circuit to address in Petitioner's pending petition for review.

   E. *Fraihat*

Although not separately enumerated as a ground for habeas relief, Petitioner argues at various points that Respondent violated the injunction issued in *Fraihat v. U.S. Immigr. & Customs Enf't* ("*Fraihat I*"), 445 F. Supp. 3d 709 (C.D. Cal. 2020). Pet. 7; Pet'r's Mem. in Supp. of Pet. 7, 16-18. In *Fraihat I*, immigration detainees with underlying medical conditions sought to certify a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(2), seeking, *inter alia*, release from detention due to the risks posed to their health by Covid-19 and the conditions and medical treatment in immigration detention facilities. *Fraihat I*, 445 F. Supp. 3d at 718-34. On April 20, 2020, the United States District Court for the Central District of California appointed class counsel and certified two subclasses

11

of immigration detainees: (1) detainees with risk factors which heighten their chances of suffering a severe Covid-19 infection, and (2) detainees with disabilities which heighten their chances of suffering a severe Covid-19 infection. *Id.* at 736-41. The Court also issued a preliminary injunction which required immigration detention authorities to (1) evaluate detainees individually to determine whether their risk factors or disabilities justify their release to avoid potentially severe Covid-19 infections, and (2) promulgate and institute measures in detention facilities to address risks posed by Covid-19. *Id.* at 741-51. The Central District of California later modified its injunction to add additional requirements, including testing, screening, and timely custody determinations. *Fraihat v. U.S. Immigr. & Customs Enf't* ("*Fraihat II*"), No. EDCV 19-1546 JGB (SHKx), 2020 WL 6541994, at *8, 12 (C.D. Cal. Oct. 7, 2020).

Petitioner alleges that Respondent has failed to comply with the testing and screening requirements and to conduct a timely custody determination. Pet'r's Mem. in Supp. of Pet. 16-18. Even assuming that is true, however, his claim cannot be brought in this action. The Supreme Court has held that "[t]he key to the [Rule 23](b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (internal quotations and citation omitted). "Classes certified under (b)(1) and (b)(2) share the most traditional justifications for class treatment—that individual adjudications would be impossible or unworkable, as in a (b)(1) class, or that the relief sought must perforce affect the entire class at once, as in a (b)(2) class." *Id.* at 361-62. Consequently, "these are

also mandatory classes: The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Id.* at 362; *see also id.* at 363 ("[Rule 23](b)(2) does not require that class members be given notice and opt out rights, presumably because it is thought (rightly or wrongly) that notice has no purpose when the class is mandatory, and that depriving people of their right to sue in this manner complies with the Due Process Clause.").

Here, Petitioner is bound by the requirement that he raise his claim in *Fraihat* itself to the extent he asserts he qualifies as a member of a subclass certified in that case and seeks the same ultimate relief sought by the subclass members. Indeed, in certifying plaintiffs' proposed subclasses, the *Fraihat* Court recognized that one "test for whether Rule 23(b)(2) certification is appropriate is 'the indivisible nature of the injunctive or declaratory remedy' sought, or 'the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Fraihat I*, 445 F. Supp. 3d at 741 (quoting *Dukes*, 564 U.S. at 360). The Central District of California held that plaintiffs satisfied this test despite the fact "that [p]laintiffs suffer from different conditions and are detained at different facilities." *Id.* The Court reached that finding and certified the proposed subclasses because

> [p]laintiffs do not seek any individualized determination by this Court of whether they are entitled to release, and do not request a different injunction for each class member. Rather, they ask the Court to determine whether ICE's systematic actions, or failures to act, in response to COVID-19 amount to violations of the class members' constitutional or statutory rights. As a result, the same injunction or declaratory judgment would provide relief to all class members, or to none of them . . . .

*Id.* Thus, to the extent Petitioner contends that he is entitled to release from custody based

13

on his membership in a *Fraihat* subclass, Petitioner must raise his claim through class counsel and await a disposition of the subclass's claims, and he may not raise an identical claim in separate litigation before this Court.

Further, Petitioner's claims that Respondent failed to comply with the *Fraihat* preliminary injunction must also be raised through class counsel in *Fraihat* itself. "Sanctions for violations of an injunction . . . are generally administered by the court that issued the injunction." *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 236 (1998) (citation omitted); *see also McCollough v. Insight Cap., LLC*, No. 2:13-CV-1551-VEH, 2014 WL 2547840, at *7 (N.D. Ala. June 5, 2014). For these reasons, if Petitioner seeks to enforce provisions of the *Fraihat* injunction, he must raise such a claim in the *Fraihat* litigation—not before this Court in separate litigation. *See F.L.R. v. Barr*, No. 4:20-cv-233-CDL-MSH, 2021 WL 1234530, at *2 (M.D. Ga. Feb. 1, 2021) (recommending dismissal of *Fraithat* claims), *recommendation adopted by* 2021 WL 1234521 (M.D. Ga. Mar. 31, 2021).

## II. Petitioner's Motions

### A. Preliminary Injunction

Petitioner moves for a preliminary injunction, requesting his "immediate release from detention." Pet'r's Mot. for Prelim. Inj. 2, ECF No. 6. His motion (ECF No. 6) is largely identical to his brief in support of his habeas petition (ECF No. 6-1). Further, he has amended his motion for preliminary injunction to cite his alleged unlawful seizure as additional grounds for granting the motion. Pet'r's Am. Mot. for Prelim. Inj. 1, ECF No. 13.

In order to obtain a preliminary injunction, a movant "must establish four separate requirements—namely, that (1) [the movant] has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Swain v. Junior*, 961 F.3d 1276, 1284-85 (11th Cir. 2020) (internal quotation marks omitted). Here, the Court recommends that Petitioner's petition be denied. Thus, he cannot establish a substantial likelihood of success on the merits. The Court, therefore, recommends that Petitioner's motion for a preliminary injunction be denied.

B.  Motions to Add Parties

Petitioner also moves to add the United States Attorney General and SDC as respondents to his petition (ECF Nos. 17, 24). Petitioner does not explain why he wishes to add them as respondents. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. Thus, Petitioner's request to add the Attorney General is denied. As for SDC, it is not a "person having custody" over Petitioner, so that request is also denied. *See* 28 U.S.C. § 2243.

When Petitioner originally filed his petition, he identified ICE Atlanta Field Office Director Thomas Giles as Respondent. Pet. 1. The Court ordered, however, that the

warden of ICDC be substituted as Respondent because that was where Petitioner was detained at the time. Order 1 n.1, ECF No. 3. Petitioner has now been transferred to SDC. Therefore, the Court orders that the warden of SDC—Russell Washburn—be substituted as Respondent.

### C. Motion for Emergency Release

Petitioner has recently filed an emergency motion for release based on his contracting Covid-19. Pet'r's Mot. for Emer. Release 1, ECF No. 26. His requested relief mirrors that in his habeas petition and his motion for preliminary injunction. For the reasons stated above, it is recommended that his request be denied.

As further grounds, the Court notes that Petitioner's own exhibits show that while he tested positive for Covid-19, he is asymptomatic. Pet'r's Mot. for Emer. Release Attach. 1, ECF No. 26-1. Moreover, prior to contracting Covid-19, Petitioner—by his own admission—refused the Moderna vaccine. Pet'r's Comment to Vaccination, ECF No. 22-2. He cannot complain about the risk posed by Covid-19, refuse prophylactic measures to decrease that risk, and then be granted release based on an outcome he invited. *See Martinez v. CoreCivic*, No. 20-1309 WJ/CG, 2021 WL 2550319, at *8 (D.N.M. June 22, 2021) ("To be plain, this Court will not reward a prisoner with release, a declaration, or an injunction for refusing inoculation.").

## CONCLUSION

For the foregoing reasons, it is recommended that Petitioner's petition and amended petition for habeas relief (ECF Nos. 1, 14), motion and amended motion for a preliminary injunction (ECF Nos. 6, 13), and emergency motion for release from detention (ECF No.

26) be **DENIED**. His motion for leave to file excess pages (ECF No. 9) is **GRANTED**. His motions to add parties (ECF Nos. 17, 24) are **DENIED**, but it is ordered that the warden of SDC, Russell Washburn, be substituted as Respondent and that the Clerk amend the docket and case caption accordingly. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO ORDERED and RECOMMENDED, this 15th day of September, 2021.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE